IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARION CARTER,  *
                *
    Plaintiff,  *
                *
vs.             *     No. 4:18-cv-00029-SWW
                *
                *
PULASKI COUNTY SPECIAL  *
SCHOOL DISTRICT,        *
                *
    Defendant.  *

OPINION AND ORDER

Marion Carter brings this action against the Pulaski County Special School District (District) alleging employment discrimination based on her race, African-American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Before the Court is a motion of the District for summary judgment [doc.#12]. Carter has responded in opposition to the District's motion and the District has replied to Carter's response. For the reasons that follow, the Court grants the District's motion for summary judgment.[1]

---

[1] In her amended complaint [doc.#5], Carter states she is also asserting a claim under the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. § 16-123-101 *et seq.* However, the District did not address ACRA in its motion for summary judgment, and Carter does not address ACRA in her response to the District's motion for summary judgment. Accordingly, the Court determines that any claim under ACRA has been abandoned. To the extent Carter's ACRA claim remains viable, the Court grants summary judgment on that claim for the same reasons it grants summary judgment on her Title VII and 42 U.S.C. § 1983 claims. See, *e.g., Thompson v. Walters*, No. 4:15-cv-00709-SWW, 2016 WL 6089719, at *3 (E.D. Ark. Oct. 18, 2016) (Race discrimination claims under 42 U.S.C. § 1983, Title VII and ACRA are evaluated under the same

I.

Carter is a math teacher at the District's Joe T. Robinson High School (Robinson) where she also served as the coach for the cheer and dance teams. Carter's supplemental cheerleading and dance team contract was for an annual salary of $2,670.00 each.

On March 28, 2017, Robinson Principal Mary Carolyn Bailey, who is white, recommended to the District Superintendent Dr. Jerry Guess, also white, that Carter's supplemental contract for her coaching duties not be renewed for the 2017-2018 school year, citing three reasons: (1) lack of participation over the previous two years; (2) inappropriate cheer routines at sporting events; and (3) inappropriate behavior of cheerleaders during out-of-town travel.

On April 18, 2017, Dr. Guess recommended the non-renewal of Carter's supplemental contract in a notice letter to Carter. This letter was based on the recommendation of Bailey and stated that the reason for this action was "*conduct unbecoming a professional employee*," namely:

1. There has been a lack of participation on the cheerleading squad and dance teams at Robinson High for the last two years. For the 2015-2016 school year, thirteen (13) students tried out for the cheerleading squad and fourteen (14) students tried out for the Dance Team. For the 2016-2017 school year, eleven (11) students tried out for the cheerleading squad and nine (9) students tried out for the Dance Team. Try-outs for the 2016-2018 [sic] school year have not been held yet, but several girls have indicated they will not be trying out.

---

standards). See also *Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 933-34 (8th Cir. 2013) (finding it was both fair to the parties and a proper application of comity for the district court to decide state claims upon dismissing federal claims where the state claims were not novel, and there was little basis for dispute as to the resolution of the state claims).

2. Parents have complained about you allowing the cheerleaders to perform what they consider to be an inappropriate cheer routine at sporting events.

3. Last year, Ms. Bailey received phone calls from witnesses alleging that the cheerleaders were very disorderly and combative to the staff at Chicken Express in Conway during travel for an out of town game. The witnesses also stated you did nothing to calm them down.

Carter requested a hearing on the recommended non-renewal of her supplemental contract before the District School Board, pursuant to the Arkansas Teacher Fair Dismissal Act. A hearing was held on August 8, 2017, wherein the Board accepted Dr. Guess's recommendation to not renew Carter's supplemental contract.[2]

In Carter's amended complaint her sole claim for race discrimination against the District is that a similarly-situated white cheerleading coach during the 2012-2013 school year, Amber Populis, had allowed the cheer team to perform inappropriate routines of which Carter complained, and that her complaints were not taken seriously.

The initial recommendation to not renew Carter's supplemental contract came from Bailey, who states she could recall no complaints regarding Populis's performance as the cheer coach, as described by Carter, during the 2012-2013 school year. At the time of the alleged misconduct by Populis, Bailey was the interim principal.

---

[2] Carter has a pending state court claim appealing the non-renewal under the Arkansas Teacher Fair Dismissal Act. See *Marion Carter v. Pulaski County Special School District*, Pulaski County Circuit Court Case No. 60CV-17-5839.

After Carter's supplemental contract was not renewed for the cheer and dance teams, she was replaced with Candace Johnson, also an African-American woman. No one replaced Carter as dance coach, as all dance teams in the District were eliminated.

Carter alleges her supplemental contract was not renewed because of her race. Carter's teaching contract remained intact and she currently teaches in the District.

II.

The District moves for summary judgment on grounds that the non-renewal of Carter's cheerleading and dance team supplemental contract had nothing to do with her race, but was based on legitimate, nondiscriminatory reasons as outlined in the notice letter she received on April 18, 2017. The District asserts it is thus entitled to summary judgment.

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

B.

Race discrimination claims under Title VII and 42 U.S.C. § 1983 are analyzed under the same standards. *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007). To survive a motion for summary judgment on a race discrimination claim, a plaintiff must either present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Macklin v. FMC Transport, Inc.*, 815 F.3d 425, 427 (8th Cir. 2016) (quotation marks and citation omitted). Because Carter has presented no direct evidence of race

5

discrimination,[3] her claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Id*. Under that framework, Carter is first required to establish a prima facie case of race discrimination by showing (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently). *Id*. If Carter establishes her prima facie case, the burden shifts to the District to show a non-discriminatory reason for the adverse employment action. *Id*. If the District does so, the burden shifts back to Carter to establish that the proffered non-discriminatory reason is pretextual. *Id*., at 427-28. To survive summary judgment, Carter must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the District's motive. *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir. 2016) (citation and quotation marks omitted).

1.

In her response to the District's motion for summary judgment, Carter argues she has established a prima facie case of discrimination because she was treated differently than Populis, a white similarly situated employee. Carter alleges that during the 2012-

---

[3] Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (quotation marks and citation omitted).

2013 school year, Populis allowed the cheer team to perform a vulgar routine in which the girls bent over at the waist and poked their lips out during a song with lyrics about fellatio. Carter alleges these routines were performed at the pep assemblies and football games, and that she attempted to discuss Populis's sponsoring of the cheer team with Bailey but that Bailey was dismissive and even laughed at her complaint and allowed Populis to continue to coach the cheer team. Bailey, however, states she could recall no complaints regarding Populis's performance as the cheer coach, as described by Carter.

Carter's allegation about the inappropriate cheer allowed by Populis does not suffice to defeat summary judgment as there is no evidence in the record of inappropriate cheers involving Populis other than Carter's own allegation. "The non-moving party 'may not rely on allegations or denials,' however, but must substantiate h[er] allegations with 'sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation [or] conjecture." *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)). This, Carter has failed to do.

But even assuming that Carter's allegations are sufficiently supported and that she has presented a prima facie case of discrimination, she has not established pretext. "Pretext may be demonstrated by showing disparate punishment between similarly situated employees, but [Carter] must show that [s]he and the alleged comparator[] 'were similarly situated in all relevant respects.'" *Lindeman v. Saint Luke's Hospital of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (quoting *Ryan v. Capital Contractors, Inc.*, 679

7

F.3d 772, 777 (8th Cir. 2012)). "This is 'a rigorous standard at the pretext stage.'" *Id*. (quoting *Torgerson*, 643 F.3d at 1051). "To be similarly situated, a plaintiff must show that [s]he and the more leniently treated employees have 'comparable disciplinary histor[ies].'" *Id*. (quoting *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 692 (8th Cir. 2002)). "And the employees also 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id*. (quoting *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014)).

Populis and Carter were not similarly situated. Populis's conduct as described by Carter involved a different cheer routine from the cheer routines of Carter, and Carter does not allege multiple individuals complained of Populis' cheer routine as they did with Carter's. In this respect, Carter acknowledged that Coach Todd Eskola testified at her hearing that he felt like the cheer in question was inappropriate and that he had multiple people come up to him and complain about it. Accordingly, Carter has not demonstrated pretext by showing disparate punishment between similarly situated employees.

2.

Carter also argues that two of the three reasons given for the non-renewal of her supplemental contract were not legitimate, non-discriminatory reasons (she does not address one of the reasons).

8

i.

Concerning the inappropriate behavior of cheerleaders at a Chicken Express during travel for an out-of-town game, Carter argues this was not a real reason for the non-renewal of her supplemental contract because no school official reviewed a video of the incident (ostensibly, states Carter, because the company would not provide it) and that the District could not prove that she acted irresponsibly while chaperoning the cheer team as no other school officials were present.  But Carter acknowledged that the Chicken Express incident "was very tense" and that she "had to calm the girls down," although she states she handled the situation as professionally as anyone could have. Further, Carter agreed that the District received complaints from patrons, although she states she is "sure they tried to call and get a jump on us actually reporting what occurred at that Chicken Express" concerning a white waiter and manager that Carter states treated them poorly.  But even though Carter feels that the incident was not serious enough to be considered as one of the reasons for the non-renewal of her supplemental contract, the District determined that it, in conjunction with the other reasons, did.  It is not the function of this Court to second guess that determination.  *Elam v. Regions Financial Corp.*, 601 F.3d 873, 880-81 (8th Cir. 2010) (federal Courts do not sit as "super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination").

ii.

Concerning the complaints of inappropriate cheer routines, Carter, in her response to the District's motion for summary judgment, does not argue against this reason for the non-renewal of her supplemental contract. Accordingly, any such argument has been waived. See *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes a waiver of that argument"). But even had Carter addressed this reason, she acknowledged that Coach Todd Eskola testified at her hearing that he felt like the cheer in question was inappropriate and that he had multiple people come up to him and complain about it.

iii.

Finally, concerning the lack of participation on the cheer and dance teams at Robinson for the last two years, Carter states this was not a true reason for not renewing her supplemental contract because the District could not verify the supposed decline in the number of students trying out for the cheer and dance teams.[4] Carter, however, has not supported her allegation that the lack of participation on the cheer and dance teams was not a true reason for not renewing her supplemental contract with sufficient probative evidence that would permit a finding in her favor based on more than mere

---

[4] The District states that the lack of participation on the cheer and dance teams is supported in the record at the termination hearing by the testimony of Baily and a document from Baily showing the declining numbers. The District states this document, which is attached to its reply to Carter's response to its motion for summary judgment, was provided to Carter at her hearing and known to her. The District goes on to state that it did not contradict itself in discovery responses, as alleged by Carter, when it had no responsive documentation for tryout

speculation or conjecture. *Ball*, 870 F.3d at 727.[5]  But even if the Court discounted the lack of participation in the cheer and dance teams as a reason for the non-renewal of Carter's supplemental contract, the inappropriate behavior of cheerleaders at a Chicken Express during travel for an out-of-town game and the complaints of inappropriate cheer routines are legitimate, non-discriminatory reasons for the non-renewal of Carter's supplemental contract that she has not shown to be pretextual.

III.

For the foregoing reasons, the Court grants the Pulaski County Special school District's motion for summary judgment [doc.#12].  The Court will enter judgment accordingly.[6]

IT IS SO ORDERED this 30th day of January 2019.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

numbers dating back to 2012-2013, as responsive documentation was not maintained, and the District knew Carter was already in receipt of the tryout numbers for 2015-2016 and 2016-2017.

[5] Carter further alleges the issue regarding the number of students trying out for the two teams is a pretext that hides a racial motive for the District's conduct because she received pressure from Danny Ebbs, the athletic director, to have more white cheerleaders and dance team members on her predominately black squads.  Baily, however, states that this wasn't a complaint from Ebbs but that it was, "As we are building this program, we want to make sure that we are building multi-cultural programs."  Baily noted that she wanted all of the programs to be multi-cultural.

[6] The motion [doc.#24] of the Pulaski County Special School District to strike Marion Carter's additional genuine issues of material fact [doc.#20] is denied as moot.